## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-1833** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **SGT. COOPER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

####    A.   Dawn Marie Ball's Litigation History

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern. Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed. Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7). Furthermore. Ball is also an inmate who has reported to the court that she engages in multiple episodes of destructive, self-defeating and senseless behavior. For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on

herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste. Ball is also, by her own admission, an inmate with a propensity for sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.). In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison. Indeed, at present Ball currently has more than 25 lawsuits pending before this court.[1]  Ball is

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815 (M.D.Pa.) .

also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.). On December 10, 2008, the district court dismissed this civil action, citing Ball's failure to exhaust her administrative remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies with regard to the issues raised in the complaint. Plaintiff's failure to oppose the remaining Defendants' motion, which also seeks dismissal for failure to exhaust administrative remedies, renders the motion unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not properly before this Court and must be dismissed.

(Doc. 36, p.5.)

While, fairly construed, the district court's dismissal decision rested on exhaustion grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."   <u>Ball v. SCI Muncy,</u> No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6.)

Nonetheless, Ball appealed this ruling. (Doc. 37.) On July 22, 2010, the United

States Court of Appeals for the Third Circuit affirmed the dismissal of this action,

noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant
> to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to
> exhaust administrative remedies. We agree with the District Court's
> decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3). Thus, the court of

appeals ruling, like the district court's decision, was expressly based upon Ball's

failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman,

No. 1:09-CV-844 (M.D. Pa.). This action was also dismissed by the district court,

which on this occasion considered the merits of Ball's claims and explicitly

concluded that Ball had failed to state a claim upon which relief could be granted.

Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36). Therefore, this

second dismissal involved a merits analysis of Ball's claims, and a determination that

Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28

U.S.C. § 1915(g). Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-

844 (M.D. Pa.) (Doc 34), but her appeal of this case was summarily denied by the

court of appeals,   Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 48), and, on

October29, 2010,  this case was closed by the appellate court with the issuance of its

mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1.) On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).This appeal lacks any such basis. As the District Court

---

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept. 21, 2011).

 In addition to these dismissals, which all pre-dated the filing of the instant complaint, Ball currently has at least ten other cases[3] pending before this court where there have been reports and recommendations issued, or adopted, calling for dismissal of claims.

One recurring theme in this array of lawsuits has been a disputatious cycle of conflict between Ball and her jailers. As part of this cycle of behavior Ball has been cited for misconduct, oftentimes involving destruction or misuse of her prison garb, which has on occasion been found to have plugged the toilet in her cell, resulting in

---

[3]<u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux,</u> No. 1:12-CV-10 (M.D.Pa.);<u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.);  <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

cell flooding. Prison officials have then placed Ball on clothing restrictions, and cited her for misconduct. As result of these clothing restrictions, Ball has lost her entitlement to a prison jumpsuit. Nonetheless when hearings have been scheduled on Ball's misconduct citations which often relate to the destruction or misuse of jumpsuits, she has demanded a jumpsuit before attending any hearing, or has insisted that the hearing be conducted at her cell. Prison officials have then treated Ball's demands as tantamount to a refusal to appear, and have conducted the disciplinary hearing in her absence. Ball, in turn, has sued prison staff, asserting that they have denied her due process. This theme is a recurring refrain in Ball's litigation and is reflecting several lawsuits filed by Ball over the past nine months. Ball v. Sipe, 1:11-CV-1830 (M.D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.).[4]

## B.    Ball's Current Lawsuit

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit. Two weeks after the court of appeals affirmed this third dismissal order in a prior lawsuit brought by Ball, finding

---

[4]In one of the curiosities which mark Ball's litigation practice, the plaintiff filed these three essentially identical complaints, but later chose to voluntarily dismiss  Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.) while persisting in the litigation of Ball v. Sipe, 1:11-CV-1830 (M.D.Pa.) and Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.).

that lawsuit to be frivolous, Ball filed a battery of six new lawsuits, including this case. See, e.g., Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

In this particular case, Ball has made conclusory allegations of various constitutional infractions. (Doc. 1.) Ball's *pro se* complaint and attachments alleged that a disciplinary hearing was scheduled for her on some unidentified prison infractions on September 7, 2011.(Id.) Ball, who was alleged to have previously destroyed prison garb, was under a jumpsuit restriction at the time of this hearing, which limited her prison wardrobe. Dissatisfied with her wardrobe choices, Ball alleged that she demanded that she to be provided a jumpsuit, or that the hearing either be continued or conducted at her cell. Prison staff refused to accede to Ball's demands, treated Ball's wardrobe demands as tantamount to a refusal to attend the hearing, and  the hearing was conducted *in absentia*. At the close of the hearing, hearing examiner found that Ball had committed these disciplinary infractions and sanctioned her with periods of disciplinary custody. Ball then filed this complaint alleging that prison officials denied her due process in these disciplinary proceedings by failing to accommodate her wardrobe demands, or conducting the hearing at her

8

cell, as she demanded. (Id.) Ball then sought compensatory and punitive damages from the defendants.

We have already placed Ball on notice that these claims may be subject to dismissal. On January 30, 2012, we denied a defense request to revoke Ball's in forma pauperis status pursuant to 28 U.S.C. §1915(g), based upon the claim that Ball had previously filed three or more actions which had been dismissed as frivolous. (Doc. 47.) While we denied this request, we found that Ball had two strikes under Section 1915(g)'s three strike provision, since she had suffered the dismissal of two prior lawsuits as frivolous. As a matter of fundamental fairness to Ball, we then advised the plaintiff that the instant lawsuit might also be subject to dismissal for failure to state a claim upon which relief may be granted. Despite this explicit warning from the court, Ball took no action to correct, or amend, her complaint. Instead, inexplicably, she filed an interlocutory appeal of this favorable ruling.

The defendants have now moved to dismiss this complaint. (Docs. 58, 59.) Ball has responded to this motion. (Doc. 67.) Therefore this matter is now ripe for resolution. For the reasons set forth below, we recommend that the defendants' motion to dismiss be GRANTED.

## II.   Discussion

### A.   Motion to Dismiss, Rule 12(b)(6)–Standard of Review

The defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a

10

complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal  conclusions.  Second, a District Court must
> then determine whether the facts alleged in the complaint are sufficient
> to  show that the plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the plaintiff's entitlement
> to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In   practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.   Ball's Claims Fail

Judged against these standards, Ball's current *pro se* complaint fails to state a claim upon which relief can be granted. Indeed, in its present form, Ball's complaint

rests on a series of flawed legal premises, which are entirely divorced from the factual context set forth in her pleadings. That factual context, recited by Ball in the complaints she has filed with this court, reveals that Ball was an inmate housed in a disciplinary unit of a state prison, where she has been on a clothing restriction due to her alleged destruction of prison-issued clothes. Despite the fact that Ball had been cited for misuse of prison-issued clothing, at the time of her disciplinary hearing, she insisted that prison officials comply with her wardrobe demands, continue her disciplinary hearing, or conduct the hearing in her cell. Ball now asserts that the refusal of prison officials to comply with her demands violated due process.

This court should decline Ball's invitation to hold prison officials personally liable for due process violations based upon their decision to decline to accede to Ball's demands that she be provided particular clothing to attend a prison disciplinary hearing. Ball's complaint fails to state a claim of a constitutional dimension upon which relief can be granted for at least three reasons.

First, Ball's complaint stems from an erroneous legal premise, that her placement in disciplinary segregation implicates a sufficient legal interest to trigger specific due process protections. In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."

Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).  Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  Protected liberty or property interests generally arise either from the Due Process Clause or from state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972).  However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary

incidents of prison life in similar situations, and therefore do not give rise to due process claims. <u>Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). Therefore, as a threshold matter, to the extent that she advances a due process argument, Ball has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison setting.

Moreover, the complaint also rests on the erroneous premise that Ball could dictate to prison officials what her prison wardrobe should be. This premise is simply incorrect. While "prison officials must ensure that inmates receive adequate . . . clothing," <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-833 (1994), correctional staff retain broad discretion in determining what garb is appropriate for inmates. Thus, the courts are particularly reluctant to intervene in inmate wardrobe disputes and have rarely found that such disputes rise to the level of a constitutional infraction. For example, courts have declined to find that inmates have a constitutional right to particular outdoor attire or exercise garb. <u>See</u> <u>Smith v. United States</u>, 432 F.App'x 113 (3d Cir. 2011). Similarly, it has been held that the imposition of clothing restrictions on a recalcitrant inmate who engages in multiple episodes of misconduct does not offend the Eighth Amendment. <u>See</u> <u>Trammell v. Keane</u>, 338 F.3d 155 (2d Cir. 2003).

This principle applies with particular force to clothing restrictions in disciplinary housing units in Pennsylvania state prisons, where inmates are often

required to wear smocks, and where "the federal . . . courts unanimously have found that the . . . conditions of confinement in the various restrictive housing units in the Pennsylvania state institutions, . . ., without more, do[] not violate the [constitution]. See, e.g., Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment); Pressley v. Johnson, 268 Fed. App'x 181, 183 (3d Cir.2008) (same); Walker v. Campbell, Civ. No. 09–282, 2010 WL 2891488 (W.D.Pa. May 4, 2010) (same); Fortson v. Kelchner, Civ. No. 08–532, 2009 WL 693247, at *3 (W.D.Pa. Mar.13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim regarding confinement in the RHU and SMU); Milhouse v. Arbasak, Civ. No. 07–01442, 2009 WL 1119488, 3 (E.D.Pa. April 27, 2009) (holding that mere placement in SHU did not violate the Eighth Amendment); Pressley v. Blaine, 544 F.Supp.2d 446, 453 (W.D.Pa.2008) (holding that 1080 days of disciplinary confinement did not implicate the Eighth Amendment); Dantzler v. Beard, Civ. No. 05–1727, 2007 WL 5018184, at *11–12 (W.D.Pa. Dec.6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams, Civ. No. 06–757, 2007 WL 2852525, 14 (W.D.Pa. Sep.27, 2007) (holding that the conditions of confinement in the LTSU did

17

not satisfy the objective component of an Eighth Amendment claim); [ Gary] Banks v. Beard, Civ. No. 03–659, 2006 WL 2192015, at *11 (W.D.Pa. Aug.1, 2006) (same)." Norris v. Davis, No.10-1118, 2011 WL 5553633, *6 (W.D.Pa Nov. 15,2011). Thus, it is clear that prison officials could–consistent with the constitution–limit Ball's wardrobes choices at a disciplinary hearing for this RHU inmate, and her claims to the contrary are unavailing.

Furthermore, Ball's complaint fundamentally misconstrues the role of the federal courts in prison disciplinary matters. In bringing constitutional claims against correctional officers arising out of prison disciplinary hearings, Ball faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently

impartial.   Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974).  The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee."  Meyers, 492 F.2d at 306.  In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston,  288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence."  See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard

is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was false, standing alone, does not state a valid cause of action. As the United States

20

Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).Moreover,  in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." Nifas v. Beard, 374 F.App'x 241, 244  (3d Cir. 2010). Finally, while prison disciplinary procedures should afford an inmate a reasonable opportunity to attend a hearing, the hearing may proceed without the prisoner if the inmate refuses to attend. Pressley v. Blaine, 352 F.App'x 701 (3d Cir. 2009).

Here the pleadings submitted by Ball do not address the procedural requisites for a disciplinary hearing. First, Ball does not dispute that the disciplinary decision was supported by "some evidence," a fact which largely negates any due process claims in this setting. We further find that, on the facts presented by Ball, prison officials did not err when they proceeded with this hearing *in absentia* after Ball demanded that she be given her choice of wardrobe for this hearing. Despite Ball's protestations that she did not refuse to attend the hearing, prison officials could reasonably have concluded that Ball's insistence on setting a series of unacceptable conditions on her attendance at this hearing, dictating the location of the hearing and her attire, was tantamount to a refusal. Since it is clear that the hearing may proceed without the prisoner if the inmate refuses to attend, Pressley v. Blaine, 352 F. App'x 701 (3d Cir. 2009), prison officials simply did not violate Ball's rights when they treated this wardrobe dispute as tantamount to a refusal to attend the disciplinary proceeding, and moved forward with Ball's participation. Indeed, at least one court has found that prison officials need not accede to inmate clothing demands in this setting and may treat a refusal to follow staff directions in this regard as a refusal to participate in the disciplinary hearing itself. See Stanley v. Mason, No. 09-25, 2010 U.S. Dist. LEXIS 30178 (W.D. Mich. Mar. 29, 2010).

Furthermore, to the extent that Ball attempts to frame Hearing Examiner Barr's

decision to deny her request for a continuance of this hearing as an issue of constitutional dimension, her claims plainly fail. As a general rule, rulings on requests for extension of time rest in the sound discretion of the adjudicator. <u>Miller v. Ashcroft</u>, 76 F. App'x 457, 461 (3d Cir. 2003). That discretion is guided, however, by certain basic principles. Thus, under this abuse of discretion standard, a continuance denial will not be disturbed " 'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant' " <u>Id.</u> (citations omitted). Moreover, any party challenging a ruling denying a continuance request, "ha[s] a heavy burden to bear."  <u>In re Fine Paper Antitrust Litigation</u> 685 F.2d 810, 817 (3d Cir. 1982)(citations omitted). Furthermore, when exercising this discretion, adjudicators must remain mindful of the fact that "justice also requires that the merits of a particular dispute be placed before the [adjudicator] in a timely fashion . . . ." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d. Cir 1998)(affirming denial of request for extension of time). Recognizing the broad discretion that adjudicators have in this field, Ball's complaints regarding the exercise of that discretion in this case simply do not rise to the level of a violation of the constitution, particularly since all Ball needed to do was attend the hearing as scheduled, subject to the wardrobe limitations imposed by prison officials.

Finally, even if Ball had stated a colorable constitutional claim relating to her

wardrobe demands at this disciplinary hearing, the defendants are nevertheless entitled to qualified immunity from these claims for damages.   In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223, 230 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

24

case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d 199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  <u>Pearson</u>, 555 U.S. 230-232; <u>Saucier</u>, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting

25

United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 236, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary

judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by a difficult, obstreperous inmate, who was demanding new clothes after having previously being cited with destroying her prior clothes, and was making the receipt of new prison garb a condition of her attendance at a disciplinary hearing. These complaints arose in a setting where the penalty imposed by prison officials, a sanction of disciplinary segregation, did not impose atypical and significant hardships on this inmate in relation to the ordinary incidents of prison life in similar situations, and therefore did not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). Furthermore, this dispute arose against the backdrop of case law which recognized that the courts are particularly reluctant to intervene in inmate wardrobe disputes and have rarely found that such disputes rise to the level of a constitutional infractions, declining to find that inmates have a constitutional right to particular outdoor attire or exercise garb, see Smith v. United States, 432 F. App'x 113 (3d Cir. 2011); holding that the imposition of clothing restrictions on a recalcitrant inmate who engages in multiple episodes of misconduct does not offend the Eighth Amendment, see Trammell v. Keane, 338 F.3d 155 (2d Cir. 2003); and finding that prison officials need not accede to inmate clothing demands in this setting and may treat a refusal to follow staff directions in this regard

as a refusal to participate in the disciplinary hearing itself. See Stanley v. Mason, No. 09-25, 2010 U.S. Dist. LEXIS 30178 (W.D. Mich. Mar. 29, 2010).

On these facts, prison officials could not reasonably have anticipated that refusing to accede to the clothing demands of this inmate who destroys her prison clothing would violate some clearly established constitutional due process right.  In short, given the state of the law in this field, in this setting the defendants simply could not have recognized that their actions in declining to permit Ball to dictate the matters relating to prison attire would violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore the defendants are entitled to qualified immunity on this claim.[5]

Ball cannot defeat the defendants' qualified immunity by arguing that their actions did not comport with internal Department of Corrections' policies. Such an argument is unavailing here. In this regard, it is well-settled that the doctrine of qualified immunity looks to the state of constitutional case law when determining whether specific rights were clearly established. Therefore, a failure–like the failure claimed here–which simply involves alleged non-compliance with agency policies,

---

[5]In appropriate cases this court is entitled to address this qualified immunity defense *sua sponte*. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

practices, or procedures does not defeat a qualified immunity defense when the plaintiff's constitutional rights were not clearly established. See, e.g., Davis v. Scherer, 468 U.S. 183 (1984); Bradley v. United States, 164 F.Supp.2d 437 (D.N.J. 2001).

In sum, in this case Ball's complaint presents legally bankrupt claims, leveling a series of meritless allegations, and we find that the defendants were entitled to qualified immunity on all of Ball's claims. Having concluded that this *pro se* complaint was flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d  229, 235 (3d Cir. 2004).   In this case, Ball was given this opportunity to amend her complaint, and has now forfeited this opportunity through her inaction. Since we have found that her complaint fails to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this complaint make it clear that she has no right to relief, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

Defendants' motion to dismiss, (Doc. 58),  be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof. Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections. The briefing requirements set
forth in Local Rule 72.2 shall apply. A judge shall make a de novo
determination of those portions of the report or specified  proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis of
that record. The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Submitted this 1st day of June, 2012.

                                   *S/Martin C.  Carlson*
                                   Martin C. Carlson
                                   United States Magistrate Judge